AF Approval __NA__                          Chief Approval __MF__

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                      CASE NO. 6:22-cr-148-PGB-LHP

LOUIS NOEL MICHEL

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, LOUIS NOEL MICHEL, and the attorney for the defendant, Marc Zee, Esq., mutually agree as follows:

**A.**   **Particularized Terms**

  1.   **Count(s) Pleading To**

The defendant shall enter a plea of guilty to Counts One and Six of the Indictment.  Count One charges the defendant with RICO Conspiracy, in violation of 18 U.S.C. § 1962(d).  Count Six charges the defendant with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1).

  2.   **Minimum and Maximum Penalties**

Count One is punishable by a maximum term of imprisonment of 20 years; a fine of not more than $250,000; a term of supervised release of not more than 3 years, and a special assessment of $100 per felony count.

Defendant's Initials __LM__

Count Six is punishable by a mandatory term of imprisonment of 2 years, which must run consecutively to the term of imprisonment imposed for Count One; a fine of not more than $250,000; a term of supervised release of not more than 1 year; and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

| First: | Two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity; |
|---|---|
| Second: | The unlawful plan affected interstate commerce; |
| Third: | The defendant knowingly and willfully joined in the conspiracy; and |
| Fourth: | When the defendant joined in the agreement, the defendant had the specific intent to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity. |

Defendant's Initials  L M

2

The elements of Count Six are:

First:      The defendant knowingly transferred, possessed, or used
            another person's means of identification;

Second:     Without lawful authority;

Third:      During and in relation to a felony conspiracy to commit wire
            fraud, in violation of 18 U.S.C. § 1349; and

Fourth:     The defendant knew that the means of identification belonged to
            an actual person.

4.    Count Dismissed

At the time of sentencing, the remaining count against the defendant,

Count Three, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's

Office for the Middle District of Florida agrees not to charge defendant with

committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this agreement.

6.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full

restitution to the United States Treasury, identity theft victims, and Certified Public

Defendant's Initials ⌐M                3

Accounting or tax preparation firms that were unlawfully breached during the course of the conspiracy charged in Count One.

7.   Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials ___LM___                    4

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 1963, whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any

Defendant's Initials   LM                    5

forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be

Defendant's Initials ⌐ᴍ                 6

polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the

Defendant's Initials LM                    7

abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

10.   Removal - Notification

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.

**B.**     **Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or

in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any

victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in

18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution

to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as

to all counts charged, whether or not the defendant enters a plea of guilty to such

counts, and whether or not such counts are dismissed pursuant to this agreement.

The defendant further understands that compliance with any restitution payment

plan imposed by the Court in no way precludes the United States from

simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C.

§ 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to

the Mandatory Victims Restitution Act, in order to ensure that the defendant's

restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall

impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this

obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified

check, or money order to the Clerk of the Court in the amount of $200, payable to

Defendant's Initials  L͡ᴍ                    9

"Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.    <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems

Defendant's Initials  LM          10

appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant

Defendant's Initials __LM__              11

expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials __LM__                12

7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _LM_                    13

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty,

Defendant's Initials  <u>LM</u>        14

defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement, including Exhibit A, constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations

Defendant's Initials  LM                    15

exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ____ day of ~~March~~ July, 2023.

ROGER B. HANDBERG
United States Attorney

LOUIS NOEL MICHEL
Defendant

Dana E. Hill
Assistant United States Attorney

Marc Zee, Esq.
Attorney for Defendant

Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

Defendant's Initials ___

16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                     CASE NO. 6:22-cr-148-PGB-LHP

LOUIS NOEL MICHEL

PERSONALIZATION OF ELEMENTS

As to Count One:

First:      Did two or more people agree to try to accomplish an unlawful
            plan to participate in the affairs of an enterprise through a pattern
            of racketeering activity?

Second:     Did the unlawful plan affected interstate commerce?

Third:      Did you knowingly and willfully join in the conspiracy?

Fourth:     When you joined in the agreement, did you have the specific
            intent to participate in the enterprise's affairs, knowing that other
            members of the conspiracy would commit at least two other acts
            of racketeering and intending to help them as part of a pattern of
            racketeering activity?

As to Count Six:

First:      Did you knowingly transfer, possess, or use another person's
            means of identification?

Second:     Did you do so without lawful authority?

Third:      Did you do so during and in relation to a felony conspiracy to
            commit wire fraud, in violation of 18 U.S.C. § 1349?

Fourth:     Did you know that the means of identification belonged to an
            actual person?

Defendant's Initials _LM_                    17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                   CASE NO. 6:22-cr-148-PGB-LHP

LOUIS NOEL MICHEL

FACTUAL BASIS

On or about January 12, 2017, the server of an accounting firm in Orlando,
Florida, identified in the Indictment as Business-11, was breached, and the
personally identifiable information (PII) of Business-11's clients was thereafter stolen
from the server and then used to file false tax refunds with the IRS.  The FBI
initiated an investigation and identified a corrupt enterprise operating in the Middle
District of Florida and nationwide to obtain PII for the purpose of committing wire
fraud and mail fraud by submitting false tax refunds and retrieving the proceeds of
this offense.  The FBI determined that, from at least December 21, 2015, through at
least March 19, 2019, Defendant LOUIS NOEL MICHEL, as well as coconspirators
MONIKA SHAUNTEL JENKINS, LOUISAINT JOLTEUS, VLADIMYR
CHERELUS, JEFF PROPHT-FRANCISQUE, ALAIN JEAN-LOUIS, ANDI
JUNIOR JACQUES, DICKENSON ELAN, MICHAEL JEAN POIX, deceased
conspirator "Rich4ever4430," and others were part of that unlawful and corrupt
enterprise involving the submission of false and fraudulent tax refunds based on

Defendant's Initials  LM                      18

stolen PII ("Enterprise").  The FBI's investigation revealed the following true facts about this Enterprise and MICHEL's involvement in this Enterprise:

***MICHEL's Role***

In the course of this Enterprise, Defendant MICHEL was a resident of Florida who accessed a dark web market that sold illegally obtained credentials of compromised computer servers ("Marketplace").  MICHEL used the Marketplace to purchase credentials of compromised computer servers to steal PII of taxpayers that MICHEL and his conspirators later used to file false and fraudulent tax returns. MICHEL's conspirators also used the Marketplace to steal Electronic Filing Identification Numbers ("EFINS") – credentials used by tax preparers to file tax returns – so that they could file fraudulent and false tax returns using the stolen PII ("Stolen EFIN-Filed Returns"). MICHEL's conspirators would also create new businesses purporting to be legitimate tax preparation firms and obtaining real EFINS on behalf of these sham businesses that were then used to file fraudulent and false tax returns using the stolen PII ("Sham EFIN-Filed Returns").  MICHEL also used stolen PII to file false and fraudulent tax returns as though they were submitted by taxpayers independently, not through a CPA or accounting firm ("Self-Prepared Returns"). MICHEL additionally used compromised computer servers to access and modify financial accounts used to receive the tax refunds obtained from the IRS when the fraudulently submitted returns were accepted. MICHEL withdrew fraud

Defendant's Initials  LM          19

proceeds from bank accounts created to receive the fraudulently obtained tax refunds as a result of the fraudulent and corrupt Enterprise.

MICHEL worked directly with JENKINS, CHERELUS, PROPHT, and "Rich4ever4430," in furtherance of this unlawful Enterprise, and social media postings indicate that MICHEL, CHERELUS, PROPHT, and "Rich4ever4430" are longtime friends. MICHEL worked indirectly and through other conspirators with JACQUES and ELAN in this same corrupt Enterprise. MICHEL had at least two Marketplace accounts with the usernames "Mill_life1804" and "Mill_life18044," and MICHEL used at least three emails in this Enterprise, including Bossbg1804@gmail.com, Drbg1804@gmail.com, and Bosshb1804@gmail.com.

Each false tax return filed in the course of this corrupt Enterprise was filed with the intent to defraud as part of a scheme to defraud by using false or fraudulent pretenses or representations about material facts and through the use of communications transmitted via wires in interstate commerce.

### _MICHEL Used the Marketplace to Obtain Access to Computer Servers_

On or about December 17, 2015, MICHEL registered an account with the username "Mill_life1804" on the Marketplace and was active on the Marketplace through this username until January 2019. Over the course of this time, MICHEL paid at least $23,000 for credentials for at least 27 compromised servers. On or about

Defendant's Initials _LM_                    20

April 20, 2016, MICHEL also registered on the Marketplace a second username, "Mill_life18044," that was not used thereafter.

Information from the servers that MICHEL purchased was used thereafter to advance the unlawful aims of the Enterprise. In this Enterprise, the conspirators used stolen EFINs to submit false and fraudulent tax returns in the names of individuals without their knowledge, using stolen PII, and the conspirators directed those fraudulently obtained refunds to false bank accounts that the conspirators controlled. The conspirators would often use the PII stolen from one firm with an EFIN stolen from a second firm in submitting the fraudulent returns.

For example, on or about February 20, 2018, MICHEL used his Marketplace account to purchase server credentials for an accounting firm from North Carolina, Victim Firm-11. On or about January 5, 2017, JEAN-LOUIS used his Marketplace account username "shitgattastop" to purchase credentials to the compromised computer server for Victim Firm-5. From on or about January 23, 2018 to on or about March 16, 2018, conspirators filed 214 false and fraudulent tax returns through the stolen EFIN of Victim Firm-5, 123 of which were filed using stolen PII from Victim Firm-11.

One of the individuals whose PII was stolen by MICHEL from Victim Firm-11 and whose PII was used to file a false tax return through the EFIN of Victim Firm-5 was L.F. L.F. was an actual person and MICHEL and others in the

Defendant's Initials ⎿ᴍ                    21

conspiracy knew that L.F. was an actual person at the time they transferred, possessed, and used L.F.'s PII in the course of submitting false and fraudulent tax returns. The fraudulent tax return was filed for L.F. on or about February 26, 2018.

MICHEL shared his credentials to the Marketplace with conspirators, including JENKINS. On February 15, 2016, JENKINS created a draft email in her email entitled "Mill_life1804." The draft email contained the correct username and password for MICHEL's account with the Marketplace, along with coded instructions on downloading e-filed tax returns. MICHEL's practice of sharing credentials was also done by other members of the conspiracy.

MICHEL's downloading of PII and other protected information from servers of compromised firms was captured in photographs. On June 14, 2016, MICHEL sent two messages from an email address with a total of 27 photographs. These photographs capture images of a computer screen showing various tax return information, similar to what a CPA firm would maintain. One photograph showed that an IP address appeared at the top of the screen. This IP address at the top of the screen indicated that the computer depicted in the photograph was remotely accessing a server that contained the tax return information depicted and that this server was being remotely accessed at the moment that the photograph was taken.

Defendant's Initials ___LM___                22

### _MICHEL Participated in Using Stolen EFINs of Compromised Servers_

Beginning on or about January 28, 2016, and continuing through on or about February 25, 2016, members of the Enterprise filed and caused to be filed approximately 175 tax returns through a stolen EFIN of Victim Firm-4, a tax preparation firm from Texas, claiming more than $1.1 million in tax refunds. Beginning the next day—on February 26, 2016—and continuing through on or about August 1, 2016, members of the Enterprise filed and caused to be filed approximately 296 tax returns through the stolen EFIN of Victim Firm-8, a CPA firm from Arizona, claiming more than $2 million in tax refunds. Of the 175 tax returns filed through the stolen EFIN of Victim Firm-4, two were filed using PII stolen from Victim Firm-12, a tax preparation firm from California. Of the 296 tax returns filed with the stolen EFIN of Victim Firm-8, 37 were filed using PII stolen from Victim Firm-12.

The stealing of Victim Firm-4's EFIN and PII, Victim Firm-8's EFIN and PII, and Victim Firm-12's PII were part of the same unlawful Enterprise. Members of the Enterprise—including JACQUES, ELAN, MICHEL, JENKINS, PROPHT, and "Rich4ever4430,"—used a combination of stolen EFINs and PII stolen from Victim Firm-4, Victim Firm-8, and Victim Firm-12 to file false tax returns as part of this unlawful Enterprise.

Defendant's Initials  L M                      23

JENKINS and MICHEL were both involved in the Enterprise's use of Victim Firm-12's PII through Victim Firm-4 and Victim Firm-8's EFINs to file false and fraudulent tax returns.  On February 26, 2016, at approximately 2:52 p.m., an email address using the full name of the individual who is the head of Victim Firm-8 was created using JENKINS's phone number as a verified recovery phone number. The stolen EFIN from Victim Firm-8 had begun to file returns that same day using the same IP address as was used to create the email address. On March 7, 2016, JENKINS, using the email frankpresto13@yahoo.com, sent youngogd@icloud.com an email with the PII of four clients of Victim Firm-12.  Later that day, youngogd@icloud.com replied with bank accounts for each individual.  Starting the next day and in the days that followed, the EFIN for Victim Firm-8 filed false returns in the names of those individuals, directing the refunds to those bank accounts. On March 23, 2016, JENKINS, using msjenkins007@yahoo.com, created a draft email with a list of names, dates, addresses, and what appear to be pin numbers or dollar amounts.  The list included the names of several clients of Victim Firm-12 whose PII had been used to file false returns through Victim Firm-8's EFIN in the weeks before. On April 3, 2016, MICHEL, using the email drbg1804@gmail.com sent an email to a conspirator at thebroker4000@gmail.com, with a list of names, social security numbers, and other tax information of multiple clients of Victim Firm-12.

Defendant's Initials _L͏M_          24

***MICHEL Participated in Submitting "Self-Prepared" Fraudulent Returns***

On February 22, 2017, JEAN-LOUIS used the Marketplace to purchase compromised server credentials for a CPA firm in Oregon, Victim Firm-13. On that day, JEAN-LOUIS emailed JENKINS those credentials. From June 25 through June 28, 2017, MICHEL and other conspirators used PII obtained through Victim Firm-13 to file false tax refunds that were made to appear to be "self-prepared" by the taxpayer whose identifiers were stolen.

| Date | Accepted/ Rejected | Name on return | Email address on return |
|------|------|------|------|
| 6/25/17 | Accepted | R.B. | Bigzoeman954@gmail.com (CHERELUS) |
| 6/25/17 | Rejected | B.B. | Douglasbrown2015@aol.com ("Rich4ever4430") |
| 6/25/17 | Rejected | P.B. | Doublerr103@gmail.com ("Rich4ever4430") |
| 6/26/17 | Accepted | P.B. | Doublerr103@gmail.com ("Rich4ever4430") |
| 6/26/17 | Rejected | B.B. | Douglasbrown2015@aol.com ("Rich4ever4430") |
| 6/26/17 | Accepted | B.B. | Douglasbrown2015@aol.com ("Rich4ever4430") |
| 6/27/17 | Accepted | J.B. | Bosshb1804@gmail.com (MICHEL) |
| 6/27/17 | Rejected | T.D. | Longlive2015@aol.com ("Rich4ever4430") |

The bank accounts to which the refunds were directed were linked to information obtained through hijacked servers including those of Victim Firm-5, Victim Firm-4, Victim Firm-8, and other firms whose servers were breached or whose server credentials were purchased by the conspirators involved in this Enterprise. The IP address used to file these returns ("IP-1") was a static IP address located at a physical address in Hollywood, Florida where JENKINS resided. IP-1

Defendant's Initials ⏤ᗰ          25

was also previously used by conspirators, including MICHEL. In 2015, MICHEL used IP-1 used to file three "self-prepared" false tax returns for three different individuals, each for $6,046 with the same pin number. These returns were rejected by the IRS. Between May 2014 and 2018, IP-1 was used to submit 900 false tax returns. These 900 false tax returns included false tax returns submitted with PII stolen from Victim Firm-13, as noted above. There was also at least one false tax return submitted in 2018 with PII stolen from Victim Firm-11, whose server credentials MICHEL had purchased from the Marketplace.

### *MICHEL Created Bank Accounts for Fraud Proceeds*

As noted above, on January 5, 2017, JEAN-LOUIS purchased server credentials on the Marketplace to Victim Firm-5. On that day, JEAN-LOUIS shared those server credentials via email with JENKINS. The conspirators then used the EFIN for Victim Firm-5 to file 214 fraudulent returns from January 23 through March 16, 2018, claiming at least $1.58 million in refunds.

The false tax returns filed through Victim Firm-5's EFIN were submitted on behalf of taxpayers whose PII was stolen from Victim Firm-5 and other firms whose compromised servers were obtained by MICHEL and other members of this Enterprise. For example, 90 of the 214 false and fraudulent tax returns filed using the Victim Firm-5 EFIN used PII stolen from clients of Victim Firm-5. MICHEL purchased Victim Firm-11's credentials on the Marketplace on February 20, 2018,

Defendant's Initials  LM          26

and, from February 21, 2018 through March 16, 2018, the stolen Victim Firm-5's EFIN was used to file 123 false tax returns using the PII of Victim Firm-11's clients. Of the 214 false and fraudulent tax returns filed, approximately 35 fraudulent returns were submitted using IP-1 (the IP linked to JENKINS's residence and previously used by MICHEL) using Victim Firm-11 and Victim Firm-5's clients' PII.

From February 13, 2018, through February 26, 2018, MICHEL, using the login Mill_life1804, purchased access to four servers on the Marketplace. These four servers were accessed from February 23, 2018, through February 27, 2018, to access or modify the bank accounts to which the proceeds were directed from the false tax refunds filed through and with information from Victim Firm-11 and Victim Firm-5.

*__MICHEL Withdrew Proceeds from Bank Accounts Created to Receive Fraud Proceeds__*

In the course of this Enterprise, conspirators also created tax preparation firms to obtain EFINs for the purpose of advancing the unlawful and fraudulent goals of the Enterprise. On November 23, 2016, a known associate of JACQUES created FSL Multiservices LLC ("FSL"), a tax preparation firm that JACQUES and other members of the Enterprise used to file fraudulent tax refunds under its own EFINs using stolen PII. The IRS issued four EFINs to FSL from October 2016 through January 2017. from January 23 through March 8, 2017, FSL filed 661 returns claiming approximately $3.1 million in refunds. The IRS paid out approximately $557,000 on FSL filed returns. ELAN and JACQUES created FSL, and other

Defendant's Initials __LM__          27

members of the conspiracy purchased access to compromised servers to obtain PII to use for fraudulent and false tax return filing using FSL's EFIN.

Among the firms whose PII was stolen and used with FSL's EFINs were Victim Firm-14 and Victim Firm-2.  On January 6, 2017, "Rich4ever4430" purchased server credentials for Victim Firm-14, a tax preparation firm in Pennsylvania.  From February 8 through March 28, 2017, the conspirators used a stolen EFIN from Victim Firm-2, a CPA firm from North Carolina, to file 57 fraudulent returns, claiming approximately $294,887 in refunds. From February 12 through 25, 2017, the stolen Victim Firm-2 EFIN filed 21 returns using PII stolen from Victim Firm-14.

For successful returns, proceeds from the Enterprise would be directed to debit cards issued in the names of taxpayers whose identities were stolen to obtain the falsely filed tax refunds.  The conspirators would then deplete the accounts by, among other things, withdrawing cash from ATMs.

Many of the fraudulently submitted tax returns submitted through the FSL EFINs were accepted by the IRS and refunds were issued to bank accounts that members of the Enterprise controlled.  In February and March 2017, MICHEL and CHERELUS engaged in a series of such withdrawals of the proceeds of the FSL-filed fraudulent tax refunds submitted as part of this Enterprise by depleting the debit

Defendant's Initials ⎿ＭＭ               28

cards of funds through ATM withdrawals.  MICHEL and CHERELUS were both captured on ATM cameras withdrawing the fraud proceeds.

| Acct. Holder | Deposit Date | Deposit Amount | Effectively Depleted | Conspirator on ATM | EFIN used | PII used |
|---|---|---|---|---|---|---|
| J.A. | 2/27/17 | $5,466 | 3/1/17 | MICHEL | FSL | Victim Firm-14 |
| T.B. | 2/27/17 | $6,431 | 3/3/17 | MICHEL | FSL | Victim Firm-14 |
| C.B. | 3/1/17 | $4,260 | 3/2/17 | CHERELUS | FSL | |
| D.B. | 2/17/17 | $7,094 | 2/19/17 | CHERELUS, MICHEL | FSL | Victim Firm-2 |
| E.B. | 3/1/17 | $4,678 | 3/1/17 | CHERELUS | FSL | |
| J.B. | 2/22/17 | $5,307 | 2/24/17 | CHERELUS | FSL | |
| C.C. | 2/27/17 | $3,866 | 2/28/17 | MICHEL | FSL | Victim Firm-2 |
| J.G. | 2/27/17 | $2,900 | 2/28/17 | MICHEL | FSL | Victim Firm-14 |
| T.G. | 2/23/17 | $2,800 | 2/24/17 | CHERELUS | FSL | |
| C.H. | 2/22/17 | $7,337 | 2/24/17 | CHERELUS | FSL | |
| T.H. | 2/17/17 | $2,907 | 2/18/17 | CHERELUS, MICHEL | FSL | Victim Firm-2 |
| S.I. | 2/17/17 | $3,084 | 2/18/17 | CHERELUS | FSL | |
| T.M. | 2/23/17 | $5,779 | 2/25/17 | CHERELUS | FSL | |
| M.T. | 2/17/17 | $4,666 | 2/19/17 | CHERELUS, MICHEL | FSL | Victim Firm-14 |
| G.W. | 2/23/17 | $5,670 | 2/25/17 | CHERELUS | FSL | |
| R.Z. | 2/23/17 | $5,927 | 2/25/17 | CHERELUS | FSL | |

MICHEL would often attempt to conceal his identity when he was withdrawing funds by putting his hand over the ATM camera.

### *Victims and Losses Attributable to Corrupt Enterprise*

In the course of this corrupt Enterprise, the participants filed 9,214 tax returns using fraudulently stolen PII and EFINs, claiming a total amount of refunds of more than $45 million.  The IRS accepted many of these returns, paying an estimated total of more than $6 million in fraudulent refunds.  The following reflects an estimation

Defendant's Initials  LM                29

of the total amounts claimed on fraudulent tax returns using stolen EFINs, stolen

PII, and EFINs associated with firms like FSL that were created by the members of

the Enterprise to advance the fraudulent aims of the Enterprise.

| Entity Whose EFIN was Used | Fraudulent Tax Returns Submitted | Amounts Fraudulently Claimed |
|---|---|---|
| Morton Fast Refund (MFR) | 828 | $4,532,354 |
| SC Accounting and Tax Services (SCA) | 303 | $1,558,327 |
| Chantol Multiservices (CMS) | 441 | $2,223,395 |
| Yvelene Tax Services (YTS) | 455 | $2,476,789 |
| FSL Multiservices (FSL) | 664 | $3,099,291 |
| Edvert Tax Prep (EDV) | 1046 | $5,140,673 |
| AAJR Multiservices (AAJR) | 1853 | $6,767,992 |
| Deedee Multiservices (DMS) | 605 | $1,728,728 |
| RP Tax | 67 | $277,827 |
| Victim Firm-1 | 331 | $1,464,738 |
| Victim Firm-2 | 57 | $294,887 |
| Victim Firm-3 | 109 | $551,234 |
| Victim Firm-4 | 175 | $1,145,257 |
| Victim Firm-5 | 214 | $1,577,384 |
| Victim Firm-6 | 219 | $1,143,764 |
| Victim Firm-7 | 147 | $452,150 |
| Victim Firm-8 | 296 | $2,099,859 |
| Victim Firm-9 | 158 | $1,035,240 |
| Victim Firm-10 | 277 | $1,454,602 |
| Self-prepared | 969 | $6,409,684 |
| **TOTALS** | **9,214** | **$45,434,175** |

Based on the evidence and investigation, the Government and the Defendant

agree that the readily provable estimation of losses attributable to the Defendant's

participation includes the tax refunds fraudulently submitted through FSL, Victim

Firm-4, Victim Firm-5, Victim Firm-8 as well as the self-prepared returns.

Defendant's Initials  LM                    30

In all of this conduct, two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity, this unlawful plan affected interstate commerce, MICHEL knowingly and willfully joined in the conspiracy, and, when MICHEL joined in the agreement, MICHEL had the specific intent either to personally participate in committing at least two other acts of racketeering, or else to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.

In addition, on or about February 26, 2018, MICHEL knowingly transferred, possessed, or used, or aided and abetted the transfer, possession or use of, without lawful authority, the name and social security number of L.F., during and in relation to conspiracy to commit wire fraud, knowing that such means of identification belonged to an actual person.

Defendant's Initials __LM__                    31